COMMONWEALTH *vs.* JOSEPH WRIGHT.

Middlesex.     March 31, 1896. — May 22, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Perjury — Indictment.*

An indictment against J. W. for perjury alleged that " J. W., late resident of Maynard, in the county of Middlesex and Commonwealth aforesaid," on a day named, " with force and arms " at a place named, before a district court holden at that place by the standing justice of the court, a certain complaint then pending in that court between the Commonwealth and M. for the illegal keeping of intoxicating liquor for sale came on to be tried, and was then and there in due form of law tried before that court, and that upon the trial of the complaint J. W. was called as a witness and was duly sworn by the standing justice; and then set out the details of the alleged perjury. *Held,* that the words quoted might be rejected as meaningless; and that, these words having been rejected, the averments were sufficient to show the regularity of the legal proceedings in the course of which the alleged perjury was committed.

An indictment for perjury alleged that the defendant, at a time and place named, was called and duly sworn as a witness upon the trial in a district court of a complaint against M. for the illegal keeping for sale of intoxicating liquors;

and that it became a material question whether certain intoxicating liquors seized in a town named were the property of M. It then alleged in detail, in respect to different parcels of the liquors so seized, that the defendant testified that one of the parcels was the property of A., and was purchased by the defendant for A., that another of the parcels was the property of B. and was purchased by the defendant for B., and also with respect to other parcels which the defendant testified were the property of and were purchased by him for C. and D.; and then averred in detail that no part of the liquors seized was the property of A. or was purchased by the defendant for him, and likewise in respect to B. and the others; and concluded with a general averment that the defendant committed perjury by swearing to "the falsehoods above set forth." *Held*, that the indictment sufficiently showed that the defendant's testimony negatived M.'s ownership of the liquors. *Held, also*, that the indictment sufficiently charged perjury in the defendant's testimony as to A., B., C., and D.

An averment in an indictment for perjury, that the defendant was called and sworn as a witness upon the trial of a complaint in a district court, includes the averment that he was "lawfully required to depose the truth in " a "proceeding in a course of justice," as provided in Pub. Sts. c. 205, § 1.

An allegation in an indictment for perjury, that the defendant was called and sworn as a witness upon the trial in a certain district court of a complaint "for the illegal keeping of intoxicating liquor for sale," sufficiently shows that the alleged perjury was committed in a criminal case.

At the trial of an indictment for perjury, the evidence for the government tended to show that a seizure of intoxicating liquors had been made upon the premises of M., who did not deny the ownership of them ; that a complaint issued from a district court against M., charging him with the illegal sale of intoxicating liquors; that, at the trial of the complaint, the present defendant appeared as claimant of the liquors seized, and was sworn as a witness; and that he testified that he purchased the liquors the day before the seizure with money received by him from several persons named, who contributed a certain sum each, and he had the liquors sent to M.'s house. The persons so named denied that they gave the defendant money to purchase the liquors for them ; and the defendant's evidence tended to show that he had named them by mistake, and because he did not have with him a book containing the names of the persons who had advanced him the money for the liquors. *Held*, that a verdict of guilty was warranted by the evidence.

INDICTMENT for perjury, as follows :

" The jurors for the Commonwealth of Massachusetts on their oath present, that Joseph Wright, late resident of Maynard, in the county of Middlesex and Commonwealth aforesaid, on the thirteenth day of May in the year of our Lord one thousand eight hundred and ninety-three, with force and arms, at Concord in the county aforesaid, before the District Court of Central Middlesex, holden at Concord in said county of Middlesex, by John S. Keyes, Esquire, then and there being the standing justice of said court, a certain complaint, then pending in said District Court of Central Middlesex between the Commonwealth of

Massachusetts and Edward T. McManus for the illegal keeping of intoxicating liquor for sale in this Commonwealth, came on to be tried and was then and there in due form of law heard and tried before said court, and the jurors aforesaid on their oath aforesaid do further present that upon said trial of said complaint as aforesaid between the parties aforesaid said Joseph Wright was then and there, to wit, on said thirteenth day of May in the year of our Lord one thousand eight hundred and ninety-three at said Concord in said county of Middlesex, called as a witness, and that said Joseph Wright was then and there duly sworn by said John S. Keyes, then and there being the standing justice of said District Court of Central Middlesex, that the evidence which the said Joseph Wright should give to the said District Court of Central Middlesex then and there between the parties as aforesaid touching the matter then in question between said Commonwealth and the said Edward T. McManus should be the truth, the whole truth, and nothing but the truth; the said John S. Keyes then and there having sufficient and competent power and authority to administer the said oath to the said Joseph Wright in that behalf.

"And the jurors aforesaid on their oath aforesaid do further present that at and upon the hearing and trial of the said complaint as aforesaid it then and there became and was a material question, whether certain intoxicating liquors seized at Stow in said county were the property of said McManus, and the said Joseph Wright, being so duly sworn as aforesaid and contriving and intending to prevent the due course of justice and of law, then and there in the said trial of said complaint upon his oath aforesaid before said District Court of Central Middlesex, between said parties as aforesaid falsely, corruptly, knowingly, wilfully, and maliciously did testify among other things in substance and to the effect following, that is to say, that one case of lager beer, a part of said intoxicating liquor seized at Stow as aforesaid, was the property of one James H. Clayton, and was purchased by him the said Wright for said Clayton with one dollar in money given to him the said Wright by the said Clayton for the purpose of purchasing one case of lager beer for him the said Clayton. That one case of lager beer, a part of said intoxicating liquor seized at Stow as aforesaid, was the property

of one Michael Walsh, and was purchased by him the said Wright for said Walsh with one dollar in money given to him the said Wright by the said Walsh for the purpose of purchasing one case of lager beer for him the said Walsh.

" That one case of lager beer, a part of said intoxicating liquors seized at Stow as aforesaid, was the property of one Isaac W. Stott, and was purchased by him the said Wright for said Stott with one dollar in money given to him the said Wright by the said Stott for the purpose of purchasing one case of lager beer for him the said Stott.  That one case of lager beer, a part of said intoxicating liquors seized at Stow as aforesaid, was the property of one John W. Church, and was purchased by him the said Wright for said Church with one dollar in money given to him the said Wright by the said Church for the purpose of purchasing one case of lager beer for him the said Church.

" That one case of lager beer, a part of said intoxicating liquors seized at Stow as aforesaid, was the property of one Nelson Anderson, and was purchased by him the said Wright for said Anderson with one dollar in money given to him the said Wright by the said Anderson for the purpose of purchasing one case of lager beer for him the said Anderson.

" Whereas in truth and in fact no part of said intoxicating liquors seized at Stow as aforesaid was the property of said James H. Clayton, and whereas in truth and in fact no part of said intoxicating liquor seized at Stow as aforesaid was purchased by him the said Wright for said Clayton, and whereas in truth and in fact said Clayton did not give to said Wright one dollar in money nor any other sum of money for the purpose· of purchasing for him the said Clayton one case of lager beer, and whereas in truth and in fact said Clayton did not give to said Wright one dollar in money nor any other sum of money for the purpose of purchasing for him the said Clayton any part of said intoxicating liquor seized at Stow as aforesaid, all of which he the said Joseph Wright then and there well knew."

There were similar allegations as to Walsh, Stott, and Church. The concluding allegation was as follows :

" Whereas in truth and in fact no part of said intoxicating liquor seized at Stow as aforesaid was the property of said Nelson Anderson, and whereas in truth and in fact no part of said

intoxicating liquor seized at Stow as aforesaid was purchased by him the said Wright for said Anderson, and whereas in truth and in fact said Anderson did not give to said Wright one dollar in money nor any other sum of money for the purpose of purchasing for him the said Anderson one case of lager beer, and whereas in truth and in fact said Anderson did not give to said Wright one dollar in money nor any other sum of money for the purpose of purchasing for him the said Anderson any part of said intoxicating liquor seized at Stow as aforesaid, all of which the said Joseph Wright then and there well knew; but said Wright falsely, knowingly, wilfully, and corruptly did then and there on his oath aforesaid commit wilful and corrupt perjury, by then and there on his oath aforesaid and before said District Court for Central Middlesex, swearing to the falsehoods above set forth.

"Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment for the following reasons:

" 1. Because it sets forth no offence known to the laws of this Commonwealth.

" 2. Because said indictment fails in due precision and certainty in the allegations therein set forth.

" 3. Because no good and sufficient assignments are therein set forth or contained, and it does not allege that the defendant was required by law to take an oath according to the statute in such case made and provided. It nowhere sets forth in specific terms, as required by statute, that the alleged offence had been committed in a criminal case or civil suit or other proceedings, or that the testimony given by the defendant was material to the issue to which it is supposed to refer, nor does it sufficiently set forth the subject matter or any part thereof of which alleged statements were made.

" 4. It does not allege that the matter sworn to was material, or that the facts set forth as sworn to and upon which the perjury is assigned were sufficient in themselves to establish the materiality. An allegation or presumption that it might have been material is not sufficient.

" 5. Because it does not allege that the District Court of Central Middlesex was lawfully holden at Concord, in the county of

Middlesex, on the thirteenth day of May, A. D. 1893, or that said court had jurisdiction of the complaint referred to in said indictment."

*Bishop*, J. overruled the motion; and the defendant excepted.

At the trial, the evidence tended to show that on or about May 1, 1893, a complaint issued from the District Court of Central Middlesex against one Edwin T. McManus, charging him with the illegal sale of intoxicating liquors. At the trial of McManus upon the complaint in the district court, it was shown that during the month of April, 1893, a seizure of liquors had been made upon his premises. The liquors consisted of about two hundred and sixteen bottles filled with lager beer and packed in three barrels, and several quarts of whiskey and rum, the whiskey and rum being in other parts of the premises.

The evidence for the government at the trial of McManus tended to prove that such liquors had been found upon his premises; and that a conversation had been had by McManus with the officers at the time of the seizure, in which he told them that he expected the boys, referring to a new board of selectmen, would treat him as well as the old board of selectmen had done.

The present defendant appeared at the trial of McManus as claimant of the lager beer seized, and was put upon the stand as a witness.

At the present trial, Herbert P. Underwood, a selectman of the town of Stow during the year 1893, testified that he was present at the trial of McManus at Concord, and was a witness; that he was present at the seizure at the house of McManus; that there were seized three barrels containing a large number of bottles of beer, besides a large quantity of whiskey and rum; that McManus said to him, in substance, "I hoped that you boys would treat me as well as the old board have done"; that at the trial of McManus the present defendant testified that he purchased at Waltham the lager beer the day before the seizure, that he had had it sent out to the house of McManus by one George W. Taylor, that before he went to Waltham he had received from certain men living in Maynard one dollar each, and that this beer purchased in Waltham had been purchased for the men who had contributed one dollar each; and that the defendant, when asked, upon cross-examination, to give the

names of the persons who had given him one dollar each, gave the names of Stott, Clayton, Walsh, and Anderson. The witness Underwood could not remember distinctly the full names as given by the defendant, but testified that he thought they were Isaac W. Stott, John W. Church, James H. Clayton, Michael Walsh, and Nelson Anderson. Underwood further testified that the defendant did not claim to have any interest in the liquors other than the lager beer.

John S. Keyes, justice of the District Court of Central Middlesex, testified in substance the same as Underwood, as did also Edward Fearns, a police officer of the town of Maynard. Judge Keyes testified that he presided at the trial in the district court; that he duly administered the oath to the present defendant as a witness; and that, after the latter had hesitatingly given four or five of the names as testified to by Underwood, hesitated still further and then gave the name of Anderson, but was not certain whether Anderson was the correct name or not.

Isaac W. Stott, John W. Church, James H. Clayton, and Michael Walsh testified that during the year 1893, and for some time previous to that, they had all lived in Maynard; that they knew the defendant and had known him for some time previously to 1893; that they had never at any time given him a dollar or any other sum of money to purchase beer for them at Waltham or any other place; and that they had never been interested in any beer that he had ever purchased.

Patrick Campbell, Patrick J. Corners, Julius Leighton, Theodore Woolershide, and said McManus, called as witnesses for the defendant, testified that they were present at the trial of McManus and had heard the present defendant testify; and that he said that he was not certain that the names given by him of the persons who had advanced a dollar each for the purchase of beer were correct, that the names were in a book which he did not have with him, and that he did not know but he might be mistaken.

The defendant testified that neither Clayton, Walsh, Stott, Anderson, nor Church, men whom he knew, had ever given him a dollar for the purchase of beer at Waltham, or at any other place; that when he said that they had done so, it was because

he was confused as a witness and was physically exhausted from want of sleep, and because he did not have, when testifying, the book containing the names of the persons who had advanced him money; that he had at first refused to·give the names, because he had not his book which contained them; that, after he had given the names, he said he did not feel sure the names given were correct; and that there were nine persons in all, including himself, who had put in a dollar apiece, and for whom the beer was bought.

At the close of the evidence, the defendant requested the judge to rule that there was no evidence sufficient to warrant the jury in finding a verdict of guilty, but the judge refused so to rule; and the defendant excepted.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. N. Allin & T. Hillis*, for the defendant.

*F. N. Wier*, District Attorney, for the Commonwealth.

ALLEN, J. 1. The first objection to the indictment rests entirely on the difficulty arising from the careless insertion of certain words which make the first part of the indictment senseless as it stands. The indictment undertakes, at the outset, to set forth the case in which the alleged perjuries were committed, and the words "Joseph Wright, late resident of Maynard, in the county of Middlesex and Commonwealth aforesaid," and then again the words "with force and arms," are found in this part of the averments, where they have no relevancy or meaning. This error is obvious enough after it is pointed out, and if the words are rejected the averments are sufficient to show the regularity of the legal proceedings in the course of which the alleged perjuries were committed. Pub. Sts. c. 205, § 5. The said words may be rejected as meaningless. 1 Bish. Crim. Proc. § 481 and note, and cases cited.

2. The objection most relied on is that the indictment does not sufficiently allege the materiality of the facts testified to by the defendant. The indictment clearly avers that it became a material question whether certain intoxicating liquors seized at Stow were the property of McManus, and it then proceeds to aver in detail, in respect to different parcels or cases of the liquors so seized, that the defendant testified that one of said parcels was the property of one Clayton, and was purchased by

said defendant for said Clayton; and that another of said parcels was the property of one Walsh, and was purchased by said defendant for said Walsh; and so on with respect to other parcels, which the defendant testified were the property of, and were purchased by him for, other persons who were named. The indictment then goes on to aver in detail that no part of the liquors seized was the property of Clayton, or was purchased by the defendant for him, and so on in respect to Walsh and the others. The indictment concludes with a general averment that the defendant committed perjury by swearing to said falsehoods. The defendant objects that it does not sufficiently appear that the testimony of the defendant related to the same time when the liquors were alleged to have belonged to McManus, and that McManus might have bought the liquors from Clayton, Walsh, etc., or they might have bought the liquors from the defendant. It is true that the words " then and there " are not introduced at this point; but, taking all the averments of the detail of circumstances testified to by the defendant, it sufficiently appears that the defendant's testimony, as charged in the indictment, negatived McManus's ownership.

3. The defendant contends that it is not averred that he was " lawfully required to depose the truth in any proceeeding in a course of justice." Pub. Sts. c. 205, § 1. But the averment of his being called and sworn as a witness includes this. *Commonwealth* v. *Knight*, 12 Mass. 273, 276.

4. The defendant contends that it does not appear that the perjury was committed in a criminal case. Pub. Sts. c. 205, § 5. The description of the subject of the complaint sufficiently shows that it was a criminal case. *Commonwealth* v. *Bouvier*, 164 Mass. 398.

5. The defendant contends that, according to the true construction of the indictment, the averments of his testimony end with the charge of what he testified in respect to Clayton, and that the final averment that he committed perjury by swearing to " the falsehoods above set forth " includes only the falsehoods as to Anderson. This construction, however, is not warranted. The indictment sufficiently charges perjury in his testimony as to Clayton, Walsh, Anderson, and the others.

6. The verdict of guilty was warranted by the evidence.

*Exceptions overruled.*